

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Colleen Elizabeth McGuinn*  
*Assistant United States Attorney*  
*Colleen.McGuinn@usdoj.gov*

Suite 400  
36 S. Charles Street  
Baltimore, MD 21201-3119

DIRECT: 410-209-4903  
MAIN: 410-209-4800  
FAX: 410-962-3091

June 7, 2024

✓ FILED ___ ENTERED  
___ LOGGED ___ RECEIVED

4:18 pm, Jul 22 2024  
AT BALTIMORE  
CLERK, U.S. DISTRICT COURT  
DISTRICT OF MARYLAND  
BY ____JK____ Deputy

Mr. Richard Bardos, Esq.  
One East Pratt Street  
Suite 904  
Baltimore, MD 21202  
*VIA E-MAIL*

Re:  *United States v. Nirado Dwayne Johnson*, Criminal No. RDB-23-048

Dear Mr. Bardos:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Nirado Johnson (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office" or "the government") (together, "the parties"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **July 5, 2024**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

1. The Defendant agrees to plead guilty to Counts One and Two of the Indictment, which charge the Defendant with Conspiracy to Commit Offenses against the United States, in violation of 18 U.S.C. § 371 and Interstate Transportation of a Stolen Motor Vehicle, in violation of 18 U.S.C. § 2312, respectively.

### Elements of the Offenses

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland and elsewhere,

*Count One: Conspiracy to Commit Offenses Against the United States*

   a. Two or more persons entered the unlawful agreement charged in the indictment;

1

b. The defendant knowingly and willfully became a member of the conspiracy;

c. One of the members of the conspiracy knowingly committed at least one of the overt acts charged in the Indictment; and

d. At least one overt act was committed to further some objective of the conspiracy.

*Count Two: Interstate Transportation of a Stolen Motor Vehicle*

a. That the vehicle described in the Indictment was stolen;

b. That the defendant transported that vehicle in interstate commerce, or caused it to be transported; and

c. That at the time of the transportation, the defendant knew that vehicle was stolen.

**Penalties**

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 371 | 5 years | 3 years | $250,000 | $100 |
| 2 | 18 U.S.C. § 2312 | 10 years | 3 years | $250,000 | $100 |

    a. In addition, the statutory maximum term of imprisonment upon revocation of supervised release in the VOSR case is two (2) years' imprisonment.

    b. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    c. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    d. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

   e. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

   f. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

   g. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## **Waiver of Rights**

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. The Defendant has the right to have the case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against the Defendant. By agreeing to proceed by way of Information, the Defendant is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

   c. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

Rev. August 2018

        d.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

        e.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

        f.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        g.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

        h.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

        i.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

Rev. August 2018

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

   a.   The **base offense level is 6** pursuant to U.S.S.G. §§2X1.1, 2B1.1(a)(2). The two counts group under USSG § 3D1.2(d).

   b.   The parties stipulate and agree that the loss exceeded $250,000 and was less than $550,000, therefore the offense level is **increased by 12 levels**. U.S.S.G. §2B1.1(b)(1)(H).

   c.   The parties stipulate and agree that there is a **2-level increase** because the offense involved ten or more victims. U.S.S.G. §2B1.1(b)(2)(A)(i).

   d.   This Office does not oppose a **2-level reduction** in the Defendant's adjusted offense level pursuant to U.S.S.G. §3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to USSG §3E1.1(b) for an additional **1-level decrease** in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to USSG §3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. **[Subtotal: 17].**

7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

Rev. August 2018

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

9.      At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Information. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

10.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

   a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

   b.    The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the correctness of any determination concerning the advisory sentencing guidelines, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

   c.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

11.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

12. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in any items that constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

13. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

14. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such as assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture made available for forfeiture.

15. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

**Restitution**

16. The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses, which the parties stipulate to be $206,581.57, joint and several with his co-defendant Mr. Leemore. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

### Defendant's Conduct Prior to Sentencing and Breach

17. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under USSG §3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea if the Court finds that the Defendant breached the Agreement.

### Court Not a Party

19. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposed any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligation under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

20. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

_____
Colleen Elizabeth McGuinn
Assistant United States Attorney


I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

07/22/24                                  _____
Date                                      Nirado Dwayne Johnson


I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

7/22/24                                   _____
Date                                      Richard Bardos, Esq.

Rev. August 2018

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that the following facts are true and accurate, and that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Nirado Dwayne Johnson ("Johnson" or "the Defendant") was born in 1980 and was a resident of Maryland. As detailed below, the Defendant was involved in a conspiracy that caused the interstate transportation of stolen motor vehicles and participated in the interstate transportation of stolen motor vehicles, knowing that the motor vehicles were stolen. Over a four-month period in 2022, Johnson and co-defendant Harvey Leemore ("Leemore") traveled throughout Maryland and into Pennsylvania and New York, burglarizing various businesses that sold John Deere motorized farm and agricultural equipment. The equipment was comprised of self-propelled vehicles such as riding mowers and utility vehicles. Leemore rented trucks and trailers, and both defendants drove to the businesses, burglarized them, and used the rented trucks to remove the stolen equipment and transport the stolen equipment back to Maryland.

### May 6, 2022 Theft from Zenith Global Logistics – Edgewood, Maryland:

In December 2021, Leemore worked for Zenith Global Logistics ("Zenith") in Edgewood, Maryland from December 2021, until Leemore was fired in April, 2022. Johnson worked at Zenith during the same time period. On the night of May 6, 2022, Leemore and Johnson stole a truck full of furniture from Zenith, valued at $50,000. Prior to the theft, the two exchanged text messages regarding which size truck they wanted to take from Zenith and how and where the truck was locked up at night. The furniture was deposited on the farm property of a co-conspirator where it was recovered in September 2022. Leemore and Johnson used the truck to burglarize and steal equipment from another business. The truck was returned by Leemore to Zenith on the night of May 8, 2022, with 500 extra miles logged.

### May 8, 2022 Theft from Atlantic Tractor – Whiteford, Maryland:

On May 8, 2022, and using the stolen Zenith truck, Leemore and Johnson broke into and entered Atlantic Tractor located at 721 Wheeler Road in Whiteford, Maryland and stole two 2022 John Deer Gator utility vehicles with VIN: 1M0835MAVNM050459 and 1M0865MDJNM050072. Leemore was wearing a ski mask, a black jacket, and a Ralph Lauren shirt later recovered from Leemore's home. The surveillance cameras at Atlantic Tractor were spray painted with a black sealant by Johnson and his co-defendant. Leemore or Johnson were wearing pink/red gloves. The stolen motor vehicles were valued at $51,427.97.

### May 19, 2022 Theft from Atlantic Tractor – Salisbury, Maryland:

On May 19, 2022, Leemore rented a truck from Penske and drove to Atlantic Tractor located on 31415 John Deere Drive in Salisbury, Maryland. Leemore and Johnson broke into and

entered the business and stole a 2022 John Deer Gator 835M (VIN: 1M0835MDTNM051498) and a 2022 John Deere Z960 Zero Turn Lawn Mower (VIN: 1TC960MCPNT100793). Leemore or Johnson were wearing pink/red gloves. The stolen motor vehicles were valued at $41,738.

June 3, 2022 Theft from Atlantic Tractor – Mechanicsville, Maryland:

On June 3, 2022, Leemore and Johnson, using a rented U-Haul truck and trailer, broke into and entered Atlantic Tractor located at 28155 Three Notch Road in Mechanicsville, Maryland, and stole a 2022 John Deere Z930M Zero Turn Lawn Mower (VIN: 1TC930MVCNT100624) and a 2022 John Deere Z950R Zero Turn Lawn Mower (VIN: 1TC960RDPNT100216). The stolen motor vehicles were valued at $30,098.

June 19, 2022 Theft from Kurtz Motorsports – Allenwood, Pennsylvania (Count 2):

On June 19, 2022, Leemore and Johnson, using a box truck rented from Enterprise, broke into and entered Kurtz Motorsports located at 151 Bryson Road in Allenwood, Pennsylvania, and stole a 2002 Can-Am Outlander 570CC ATV (VIN: 3JBLGAT48NJ002763) and a 2002 Kawasaki Mule SXS 700CC (VIN: RGSW643A4NBA71212). Leemore was wearing a Champion brand sweatshirt which was later recovered from inside Leemore's car. Leemore and Johnson exchanged text messages on the day prior, and Leemore texted that he wanted to try that bike/4-wheeler place that is only 2.5 hours away. The stolen motor vehicles were valued at $18,400.

June 23, 2022 Theft from Atlantic Tractor – Salisbury, Maryland:

On June 23, 2022, Leemore and Johnson, using a rented U-Haul truck, broke into and entered Atlantic Tractor in Salisbury, Maryland, and stole a 2022 John Deere Z994R Zero Turn Lawn Mower (VIN: 1TC994RHCNT040076) and a 2022 John Deere Z930 Zero Turn Lawn Mower (VIN: 1TC930MCLNT106188). The stolen motor vehicles were valued at $36,320.21.

July 3, 2022 Theft from Land Pro Equipment – Watsontown, Pennsylvania:

On July 3, 2022, Leemore and Johnson, using a rented U-Haul truck, broke into and entered Land Pro Equipment located at 141 Byers Lane in Watsontown, Pennsylvania, and stole a 2022 John Deere 7950 Zero Turn Lawn Mower (VIN: 1TC950MGJNT100639) and a 2022 John Deere Z960M Zero Turn Lawn Mower (VIN: 1TC960MGCMT100033). The stolen motor vehicles were valued at $20,000.

July 5, 2022 Theft from Digger Manufacturing – Muncy, Pennsylvania:

On July 5, 2022, Leemore and Johnson, broke into and entered Digger Manufacturing located at 8157 Route 15 Highway, Muncy, Pennsylvania, and stole an enclosed black ACT trailer bearing an Ohio license plate. The license plate was later found during a search of Leemore's car, and this trailer was seen on later surveillance videos during Lemoore and Johnson's continuing thefts. The trailer was valued at $10,545.14.

July 19, 2022 Theft from United AG and Turf – Goshen, New York:

On July 19, 2022, Leemore and Johnson, using a rented U-Haul and the stolen trailer from Muncy, Pennsylvania, broke into and entered the United AG and Turf, located at 6&1/2 Station Road in Goshen, New York, and stole a 2022 John Deer Gator XUV 835R (VIN: 1M0835RDENM050213). The John Deer Gator was valued at $35,526. A later search of Leemore's phone revealed an internet search for this business and address on the date of the theft.

July 24, 2022 Theft from Cazenovia Equipment – Cortland, New York:

On July 24, 2022, Leemore and Johnson, using a rented U-Haul truck, broke into and entered Cazenovia Equipment located at 3885 Route 11, Cortland, New York, and stole a 2021 John Deere Z997 Zero Turn Lawn Mower (VIN: 1TCZ997RCMN070309), valued at $20,298.51.

July 25, 2022 Theft from Deer Country Farm & Lawn – Mohnton, Pennsylvania:

On July 25, 2022, Leemore and Johnson, using the same rented U-Haul truck from the Cortland, New York theft, and towing the stolen black trailer, broke into and entered Deer Country Farm & Lawn located at 1923 Bowmansville Road, Pennsylvania, and stole a 2021 John Deere Gator 865M (VIN: 1M086MAJMM040498) and a 2020 John Deere Zero Turn Lawn Mower (VIN: 1TC930RCANT100317). The stolen motor vehicles were valued at $38,034.

August 26, 2022 Theft from Atlantic Tractor – Whiteford, Maryland:

On August 26, 2022, Leemore and Johnson, using a white pick-up truck and the stolen black trailer, broke into and entered Atlantic Tractor located in Whiteford, Maryland, and stole a 2021 John Deere XUV835M Gator (VIN: 1M0835MBJMM040051), a 2022 John Deere Z955R Gas Mower (VIN: 1TC955RHVLY090003), and two John Deere Z970R Gas Mowers (VIN: 1TC970RCTNT100457 and 1TC970RCJNT100477). Leemore was wearing a ski mask and gloves, and black sealant was sprayed on the surveillance cameras. The stolen motor vehicles were valued at $76,907.

September 19, 2022 Theft from Atlantic Tractor – Mechanicsville, Maryland:

On September 19, 2022, Leemore and Johnson, using a rented U-Haul truck and stolen trailer, broke into and entered Atlantic Tractor in Mechanicsville, Maryland and stole a 2022 John Deere XUV835M Gator (VIN: 1M0835MAJMM042888); a 2022 John Deere Z930M Zero Turn Lawn Mower (VIN: 1TC930MCLNT107616); and a 2022 John Deere Z930M Zero Turn Lawn Mower (VIN: 1TC930MCHNT107617). The stolen motor vehicles were valued at $46,751.

September 22, 2022 Theft from Landpro Equipment – Avon, New York:

On September 22, 2022, Leemore and Johnson, using a rented U-Haul truck, broke into and entered Landpro Equipment located at 5614 Tec Drive in Avon, New York, and stole a 2022 John Deere Gator XUV835M (VIN: 1M0835MAPNM052979), valued at $20,000. A later search of Leemore's phone revealed he had searched this address on the day of the theft.

September 26, 2022 Theft from John Deere United AG and Turf – Fultonville, New York:

By September, 2022, members of the Harford County Sheriff's Office had been investigating the thefts originating in Whiteford, Maryland, and connected to the other businesses in Maryland, Pennsylvania and New York. Law enforcement had developed Leemore as the suspect, and they began to surveil him. Leemore and Johnson were observed in the area of Middle River off Bengies Road with a U-Haul truck and the stolen trailer. Leemore drove the U-Haul truck to 8019 Bel Air Road in Nottingham, Maryland, where he was observed talking to a co-conspirator near some warehouses. A stolen tractor from the Atlantic Tractor in Whiteford, Maryland, was seen next to the men as they spoke. Leemore and Johnson were then seen driving away in the U-Haul truck. Law enforcement applied for and received a tracker warrant which was placed on the U-Haul as well as Leemore's personal vehicle.

Via the GPS data on the tracker for the U-Haul, Leemore and Johnson traveled to Fultonville, New York, on September 25, 2022, arriving at the John Deere United AG and Turf located at 3021 State Highway 5S at 11:30 p.m. The U-Haul remained at the business for approximately 20 to 40 minutes, and then returned to Maryland. At 5:00 a.m., on September 26, 2022, Leemore was observed driving the U-Haul and returning to 8019 Bel Air Road in Nottingham where the trailer was unhitched. Leemore and Johnson were arrested later that day. Investigators executed a series of warrants and recovered the following:

| | |
|---|---|
| Stolen Trailer - | a 2022 John Deere Gator XUV835 (VIN: 1M08835RDPNM050474), and a 2022 John Deere Zero Turn Lawn Mower, model 2915E (VIN: 1TC915EACNT120006) – the equipment stolen from the John Deere United AG and Turf, valued at $49,915.49. |
| Leemore's residence - | muddy boots and jeans, the shirt from the May 8, 2022 theft. |
| Johnson's residence - | a ski mask matching the one depicted in surveillance from almost all of the burglaries. |
| Leemore's car - | gloves, ski mask, walkie talkies, and the shirt seen in the June 19, 2022 and July 3, 2022 thefts. |
| U-Haul truck - | the Ohio license plate belonging to the stolen trailer, a receipt for the Delaware Memorial Bridge toll, a metal cut-off blade use to cut through fencing, black sealant coating used to black out surveillance cameras. |

Investigators also executed a search warrant at the Bel Air Road warehouse where Leemore and Johnson were seen with the stolen tractor from Whiteford and recovered the stolen equipment from the July 24, 2022 theft from Cortland, New York; the September 22, 2022 theft from Avon, New York; and the equipment stolen from both Mechanicsville, Maryland thefts.

Leemore's phone also placed him near 11428 Bel Air Road on the dates of several of the thefts, which was the address of the co-conspirator he was seen with at the warehouse where stolen equipment was recovered. The property is a farm with several out buildings and several pieces of John Deere equipment could be seen in plain view. A search warrant at that address was executed on October 31, 2022. The renters living there identified the co-conspirator as their landlord. On the first floor of the house, the furniture stolen from Zenith in May 2022 was recovered. In a barn on the property, equipment stolen from Mechanicsville, Maryland; and Goshen New York were recovered. The renter described a person resembling Leemore as the person who would deliver the farm equipment using a U-Haul truck and trailer.

In total, the investigation revealed that Leemore and Johnson, with the help of others, transported or aided in the interstate transportation of several stolen vehicles, some of which that were recovered and identified. The combined value of these stolen vehicle equipment is at least $495,000.

SO STIPULATED:

_____
Colleen Elizabeth McGuinn
Assistant United States Attorney


I have reviewed the foregoing Statement of Facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as a part of my plea agreement with the government in this case.

_____
Nirado Dwayne Johnson
Defendant

I am the attorney for the defendant. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

_____
Richard Bardos, Esq.
Counsel for Defendant